UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JONES LANG LASALLE AMERICAS, INC.,

Plaintiff/Counter-Defendant,

v.

POMEGA ENERGY STORAGE TECHNOL-
OGIES, INC., and KONTROLMATIK
TECHNOLOGIES, INC.,

Defendants/Counter-Plain-
tiffs.

No. 1:24-CV-05190

Judge Edmond E. Chang

## MEMORANDUM OPINION AND ORDER

Jones Lang LaSalle Americas, Inc. (which the parties and some in the industry call JLL) sues Defendants Pomega Energy Storage Technologies, Inc. and Kontrol-matik Technologies, Inc. (which the Court will collectively call Pomega) for breach of contract. R. 1, Compl. ¶¶ 34–43.[1] Pomega brings counterclaims for a declaratory judgment that the parties' contract is illegal under both Illinois and South Carolina law, breach of fiduciary duty, breach of contract, and violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 *et seq*. R. 47, Counterclaims ¶¶ 71–129. JLL moves to dismiss the counterclaims. R. 51, Pl.'s Mot. Because Pomega

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a). Specifically, JLL is a Maryland corporation with its principal place of business in Illinois, whereas Pomega and Kontrolmatik are Delaware corporations with principal places of business in Virginia. R. 47, Counterclaims ¶¶ 15–16. And because JLL alleges that Pomega owes $4,250,000 in damages, Compl. at 7–8, the amount-in-controversy requirement is met.

plausibly alleges that the contract is illegal under South Carolina law, that JLL breached its fiduciary duty, and that JLL committed a deceptive practice, the motion to dismiss those counterclaims is denied. But the Court dismisses Pomega's breach-of-contract counterclaim for failure to state a claim.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in Pomega's counterclaims and draws all reasonable inferences in its favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007)).

Pomega is a subsidiary of a Turkish corporation that operates a lithium-ion battery cell manufacturing facility overseas. Counterclaims ¶ 21. Pomega wanted to open a similar facility in the United States, but it was unfamiliar with the country's markets and regulations. *Id.* ¶¶ 20, 22. So Pomega hired JLL to help it navigate the process. *Id.* ¶¶ 22, 29. In May 2022, JLL and Pomega executed a Memorandum of Understanding—which the parties call the Agreement—that outlined the services JLL would provide and how it would be paid. *Id.* ¶ 23; R. 47, Defs.' Counterclaims Exh. A, Agreement. JLL agreed to help Pomega pick a location for the manufacturing facility, and then negotiate with the pertinent state and local economic-development agencies to develop a package of economic incentives for Pomega. Counterclaims ¶¶ 29–32; Agreement Exh. A § 3.1. In return, Pomega agreed to pay JLL 10% of the negotiated economic benefits or $5 million, whichever would be less. Counterclaims ¶¶ 32–33; Agreement Exh. A § 3. The Agreement also contained the following choice-

2

of-law provision: "The Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois." Counterclaims ¶ 48; Agreement § 9.

On JLL's advice, Pomega chose a site in Colleton County, South Carolina for its facility. Counterclaims ¶ 36. In December 2022, the South Carolina Department of Commerce offered Pomega a combined incentive package from the state and county that totaled $127,565,742. *Id.* ¶ 50. Pomega says that JLL identified and negotiated some, but not all, of the incentives in the package. *Id.* ¶ 51. For instance, JLL negotiated the terms of a cash grant from the state and a special source revenue credit from the county, but corporate income tax credits and sales tax exemptions were awarded based solely on statutory formulas, not JLL's efforts. *Id.* ¶¶ 51–52.

In February 2023, JLL and Pomega signed a First Amendment to the Agreement (which the parties call the Amendment). Counterclaims ¶ 58; R. 47, Defs.' Exh. C, Amendment. As relevant here, the Amendment replaced a sentence in the Agreement that set a deadline for the contingency-fee payment with the following language:

> [The incentives-negotiation fee] is due to JLL upon approval of benefits package and relevant state and/or local governmental entities. [Pomega] acknowledges that JLL has completed the Services subject matter of this Agreement and that Payment of the … Fee is now due and payable to JLL and 100% free of any contingencies ….

Counterclaims ¶¶ 62–63; Amendment § 3. The Amendment also set a schedule for Pomega to pay JLL $5 million over the course of 18 months. Counterclaims ¶ 63; Amendment § 3.

3

Pomega paid JLL $750,000 but refused to pay the rest of the $5 million. Counterclaim ¶ 66; R. 47, Answer ¶¶ 28–29, 31. JLL brought this suit for breach of contract. *See generally* Compl. Pomega brought its own suit in South Carolina, which was eventually transferred to this District and consolidated with this case. R. 40, Status Rep.; R. 42, 04/09/25 Order; R. 43, Pomega Am. Compl.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[2] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

Claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the Illinois Consumer Fraud and Deceptive Trade Practices Act. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Thus, Rule 9(b) requires that [party]'s complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, her complaint "must describe

5

the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (cleaned up).

### III. Analysis

### A. Declaratory Judgment

Pomega's first counterclaim seeks a declaratory judgment that the Agreement and Amendment are illegal and void because the contingency fee violates both Illinois and South Carolina law. Counterclaims ¶¶ 71–89. JLL argues that Illinois law governs, pursuant to the Agreement's choice-of-law provision, and the Illinois statute that prohibits contingency fees does not apply. R. 52, Pl.'s Br. at 5–11.

"Choice-of-law considerations arise only if there is an actual conflict of law among the states," meaning "application of one state's law will yield a different result than the application of another's …." *Dancor Constr., Inc. v. FXR Constr., Inc.*, 64 N.E.3d 796, 812 (Ill. App. Ct. 2016). A conflict does apply here. South Carolina's administrative tax statute incorporates restrictions outlined in the United States Treasury Department's Circular No. 230. S.C. Code Ann. § 12-60-90(A), (E). The Circular, in turn, prohibits charging contingency fees for services rendered in connection with tax authorities (with some exceptions that do not apply here). Treas. Cir. 230 § 10.27(b). Thus, under South Carolina law, consultants cannot charge fees contingent on their communications with state or local tax authorities, such as a contingency fee for negotiations over economic incentives with tax authorities. *See* S.C. Code Ann. § 12-60-90(A), (E), (F)(2)(b); Treas. Cir. 230 § 10.27(b). Applying South Carolina law would invalidate JLL's contingency fee as illegal.

6

In contrast, applying Illinois law would permit JLL to enforce the contingency fee. Similar to South Carolina, Illinois has a statute that prohibits charging fees for lobbying for government action that are contingent on the outcome of the action. 25 ILCS 170/8. But JLL argues that the statute does not apply because its contingency fee depended on its negotiations with *South Carolina* authorities, not Illinois authorities. Pl.'s Br. at 9. It is a "long-standing rule of construction in Illinois" that "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005) (cleaned up). Nowhere does the Illinois statute expressly apply to lobbying outside of Illinois. Indeed, other sections of the statute make clear that it prohibits contingency fees for lobbying only in *Illinois. See* 25 ILCS 170/2(c), (e) (defining "lobbying" as communicating with an official to influence government action, and defining "official" based on a list of Illinois government positions, such as Governor and members of the General Assembly); 25 ILCS 170/11(b), (c) (allowing the county State's Attorney and Attorney General of Illinois to prosecute violations of the statute in the county where the offense is committed or Sangamon County). Because JLL did not negotiate economic incentives with Illinois officials, the Illinois statute does not apply and does not render illegal JLL's contingency fee.

But that is not the end of the story. Because there is an actual conflict of laws, the Court proceeds with a choice-of-law analysis. *Dancor Constr.*, 64 N.E.3d at 812–13. As the forum state, the Court looks to Illinois choice-of-law rules to determine which state's law applies. *Heiman v. Bimbo Foods Bakeries Dist. Co.*, 902 F.3d 715,

718 (7th Cir. 2018). Illinois courts generally honor choice-of-law provisions in contracts. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194 (Ill. 2002). But there are two exceptions: when "(1) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (2) its application would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Old Republic Ins. Co. v. Ace Property & Cas. Ins. Co.*, 906 N.E.2d 630, 636 (Ill. App. Ct. 2009) (cleaned up). The first exception does not apply; because JLL has its principal place of business in Illinois, there was a reasonable basis to choose Illinois law. Counterclaims ¶ 16; *Dancor Constr.*, 64 N.E.3d at 813.

But the second exception does apply. First, application of Illinois law would be contrary to a fundamental policy enacted by South Carolina. "Fundamental policies include state statutes that make certain contracts illegal …." *Dancor Constr.*, 64 N.E.3d at 814. South Carolina's statute establishes its fundamental public policy against contingency fees for communications with its tax authorities. *See* S.C. Code Ann. § 12-60-90(A), (E), (F)(2)(b); Treas. Cir. 230 § 10.27(b). So to apply Illinois law and permit JLL to enforce the contingency fee would be contrary to South Carolina's public policy.

Second, South Carolina has a materially greater interest than Illinois in the determination of the legality of the contingency fee. The subject matter of the Agreement—Pomega's facility—is in South Carolina. Counterclaims ¶¶ 36, 50. And JLL

8

negotiated the economic incentives with authorities in South Carolina. *Id.* ¶ 51. South Carolina and one of its counties are offering over $127 million in economic incentives. *Id.* ¶ 11. South Carolina clearly has a greater interest in preventing impropriety in negotiations with its tax officials than Illinois. The only real connection to Illinois is that JLL's principal place of business and staff are here, and that does not come close to outweighing South Carolina's interest. *Dancor Constr.*, 64 N.E.3d at 814. "In fact, Illinois implicitly shares [South Carolina's] interest, as Illinois has a similar public policy" against contingency fees in this context. *Id.* at 815. So applying South Carolina law prevents JLL from enforcing a fee arrangement that violates the public policy of *both* states. *See* R. 56, Defs.' Br. at 11. Adopting JLL's approach to choice-of-law would equate to "heads I win, tails you lose."

Because the fundamental-policy exception applies, the Court does not enforce the choice-of-law contractual provision, but instead applies South Carolina law. JLL does not contend that the contingency fee is permissible under South Carolina law. *See* Pl.'s Br. at 5–7. Pomega thus adequately states a claim for declaratory judgment that the contingency fee is illegal and void under South Carolina law.

It is worth acknowledging that Pomega does not expressly raise this exception to the choice-of-law provision. But Pomega did plead that the contingency fee violates *South Carolina* law in its counterclaim. *See* Counterclaims ¶¶ 80–87. And it argues in its response brief that the fee violates South Carolina public policy. Defs.' Br. at 10–11. Thus, although the fundamental-policy exception was not expressly teed up using that specific label, Pomega presented the issue adequately for the Court to

resolve. But if JLL wishes to move to reconsider this aspect of the Court's decision, the Court will consider the issue de novo, without the usual constraints on reconsideration motions.

JLL raises a few other arguments that lack merit. JLL argues that there is no longer a "contingency" fee because the Amendment declared that payment was due "100% free of any contingencies." Pl.'s Br. at 9–10; Amendment § 3. But JLL cannot simply declare that "there was no longer a contingency payment" and make it so. Pl.'s Br. at 10. The $5 million that JLL demands is based on the contingency-fee provision; the parties did not renegotiate or re-calculate the fee amount using some other fixed method. Agreement Exh. A § 3. So JLL still seeks to enforce a "contingency" fee.

JLL also argues that, even if contingency fees violate public policy, it is also against public policy to allow Pomega to walk away without paying JLL for its services. Pl.'s Br. at 10. But it is South Carolina's public policy not to enforce illegal contracts and that "the party who has agreed to perform is excused from doing so" when the contract is illegal. *White v. J.M. Brown Amusement Co.*, 601 S.E.2d 342, 345 (S.C. 2004).

Finally, JLL contends that the contingency fee can be severed from the rest of the Agreement pursuant to its severance clause. Pl.'s Br. at 10; Agreement § 11. The Court need not decide severance at this stage. Even if the contingency fee is severable, that does not provide a basis to conclude that Pomega fails to state a claim for declaratory judgment. JLL's motion to dismiss is thus denied on the first counterclaim.

## B. Breach of Fiduciary Duty

Pomega next brings a counterclaim for breach of fiduciary duty.[3] Counterclaims ¶¶ 90–102. To adequately state this claim, Pomega must allege that "a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused" Pomega's injury. *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000). Pomega says that JLL breached its fiduciary duty by failing to disclose that the contingency fee violated Illinois and South Carolina law, and by violating Illinois and South Carolina law by including the contingency fee in the Agreement. Counterclaims ¶ 99.

JLL argues that this counterclaim should be dismissed for the same reasons as the first counterclaim (that is, because the contingency fee does not violate Illinois law). Pl.'s Br. at 11–12. But because the Court denies JLL's motion to dismiss the first counterclaim, this does not provide a basis to dismiss the second counterclaim.

JLL also contends that because Pomega argues the Agreement is void, then it cannot also argue that JLL owes a fiduciary duty based on the Agreement. Pl.'s Br. at 12. But Pomega can plead legally inconsistent counterclaims in the alternative. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). And these counterclaims are not even legally inconsistent. Pomega alleges that a fiduciary duty existed for two

---

[3]The Agreement's choice-of-law provision applies to Pomega's fiduciary-duty and breach-of-contract claims. *See Boatwright v. Delott*, 642 N.E.2d 875, 877 (Ill. App. Ct. 1994). And neither of the exceptions to enforcing the choice-of-law provision apply (that is, applying Illinois law to these counterclaims would not violate South Carolina public policy). Illinois law thus governs Pomega's second and third counterclaims.

reasons: first, JLL recognized that it had a fiduciary duty in the Agreement. Counterclaims ¶ 92; Agreement § 1. Second, JLL represented to Pomega that it "had specialized knowledge and skill in the real estate industry, and with the economic incentives process specifically, by virtue of its experience in the industry." Counterclaims ¶ 93. Thus, even if the Agreement is void, Pomega plausibly alleges that JLL owed it an independent fiduciary duty based on JLL's representations of expertise. *Miller v. Harris*, 985 N.E.2d 671, 678 (Ill. App. Ct. 2013).[4] Pomega thus states a claim for breach of fiduciary duty.

### C. Breach of Contract

Pomega also claims that, even if the Agreement is valid, JLL breached the contract. Counterclaims ¶¶ 103–12. To state a breach-of-contract claim, Pomega must allege (1) "the existence of a valid and enforceable contract," (2) its performance, (3) JLL's breach, and (4) resulting injury. *Babbit Muns., Inc. v. Health Care Serv. Corp.*, 64 N.E.3d 1178, 1186 (Ill. App. Ct. 2016). JLL contends that Pomega has failed to plausibly allege the first, second, and third elements. Pl.'s Br. at 12– 13.

JLL says that Pomega fails to allege the existence of a valid contract because it argues in the first counterclaim that the Amendment is illegal and void. Pl.'s Br. at 13. But Pomega expressly pleads this counterclaim in the alternative, which is permitted. Counterclaims ¶¶ 103–112; *Tamayo*, 526 F.3d at 1086.

---

[4]On the second and fourth counterclaims, JLL belatedly argues that "it did not hold itself as an expert in the law" and Pomega could not rely on its ignorance of the law. R. 57, Pl.'s Reply Br. at 11–12, 15. But JLL waived this argument by failing to raise it in its opening brief. *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019).

JLL next argues that Pomega fails to allege that it performed under the contract because Pomega admits that it only paid JLL $750,000 (rather than the full $5 million). Pl.'s Br. at 13. But Pomega pled that it is excused from paying JLL because JLL materially breached the contract, and that it otherwise fully performed. Counterclaim ¶ 105. Pomega has thus adequately alleged its performance. *See Elda Arnhol & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (describing how, under Illinois law, a party's material breach of contract excuses the other party from performing).

Finally, JLL contends that it did not materially breach the Agreement. Pomega makes two allegations of breach. First, it says that JLL materially breached the Agreement's provision that JLL must comply with all applicable laws because JLL included an illegal contingency fee in the Agreement. Counterclaims ¶¶ 106–07; Agreement § 3. But if the contingency fee is illegal, then there is no valid and enforceable contract. *See supra* Section III.A. Because these are internally inconsistent facts, Pomega cannot state a breach-of-contract claim on this particular ground. *See Tamayo*, 526 F.3d at 1086.

Second, Pomega says that JLL breached the Agreement "by demanding payment of the full" $5 million contingency fee when the "vast majority" of the economic incentives Pomega received from the South Carolina government were not "identified or negotiated" by JLL. Counterclaims ¶¶ 108–11. But this is a defense to JLL's calculation of the contingency fee, not an allegation that JLL materially breached the contract. Pomega can raise this argument as a defense to JLL's breach-of-contract

13

claim, but not as a counterclaim. Because Pomega fails to plausibly allege that JLL breached the Agreement, this counterclaim is dismissed.

### D. Illinois Consumer Fraud and Deceptive Trade Practices Act

Finally, Pomega brings a counterclaim for violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act.[5] Counterclaims ¶¶ 113–29. To state a claim under the Act, Pomega must allege that (1) JLL committed a deceptive act or practice, (2) JLL intended for Pomega to rely on the deception, (3) the deception happened in the course of trade or commerce, and (4) the deception proximately caused Pomega's injury. *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015).

JLL contends that Pomega alleges a mere breach of contract, which does not rise to the level of a deceptive act or practice. Pl.'s Br. at 14–15. But Pomega plausibly alleges that JLL engaged in several deceptive acts that go beyond a breach of contract. First, Pomega says that JLL acted deceptively because it "knew that South Carolina prohibits consultants from charging a contingency fee on an award of economic incentives," yet included a contingency fee in the Agreement anyway. Counterclaims ¶¶ 43, 123. It is plausible that JLL knew that the contingency fee violated South Carolina law because JLL had previously assisted other companies in the

---

[5]Because this counterclaim is based on an Illinois consumer-protection statute, not the parties' Agreement, the choice-of-law provision does not control. *See Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*, 971 N.E.2d 1183, 1191 (Ill. App. Ct. 2012); Agreement § 9 ("The Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois." (emphasis added)). Even if the provision applies, it also designates Illinois law. And there is no reason to think one of the exceptions to enforcing the choice-of-law provision applies.

economic incentives process in the state. *Id.* ¶ 40. Pomega also alleges that JLL knew the fee arrangement was illegal because the South Carolina job development credit application plainly prohibits contingency fees. *Id.* ¶ 43.

Second, Pomega says that JLL acted deceptively by overstating its role in the negotiation of economic incentives to lure Pomega into paying an excessive fee. Counterclaims ¶¶ 119–20. Pomega alleges that "JLL knew that most economic incentives in South Carolina are awarded pursuant to statutory formulas rather than through negotiations with the State and its subdivisions," but "did not share that information with Pomega." *Id.* ¶¶ 42, 120. Again, given JLL's alleged expertise in this area, it is plausible that JLL knew that it would not have to do much work negotiating the economic incentives, but did not share that information with Pomega.

Because Pomega alleges that JLL knew yet failed to disclose material information, it pleads more than a mere failure to perform under the Agreement. *See Pappas v. Pella Corp.*, 844 N.E.2d 995, 998–1000 (Ill. App. Ct. 2006). JLL's alleged deceptive acts are also not mere puffery, as JLL asserts. Pl.'s Reply Br. at 14–15. Pomega alleges that JLL factually misrepresented the scope of the negotiation services it would provide, which is deception, not puffery. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007) ("Puffing involves express opinions, not asserting something as fact. Although there is some leeway in puffing goods, a seller may not misrepresent them or say that they have attributes that they do not possess." (cleaned up)). Pomega thus adequately states a claim for a violation of the Act.

15

## IV. Conclusion

JLL's motion to dismiss, R. 51, is denied as to Pomega's counterclaims for declaratory judgment, breach of fiduciary duty, and violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act. But the third counterclaim for breach of contract is dismissed. It is time to get discovery going, so the parties shall confer and file a joint status report with a proposed discovery schedule (using the pertinent section in the template report, R. 10-1), by April 13, 2026.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2026

16