**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JONES LANG LASALLE AMERICAS, INC.,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>POMEGA ENERGY STORAGE TECHNOLOGIES, INC., and KONTROLMATIK TECHNOLOGIES, INC.,<br><br>Defendants/Counter-Plaintiffs. | NO. 1:24-CV-05190<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

Defendants Pomega Energy Storage Technologies, Inc. and Kontrolmatik Technologies, Inc. (which the Court will collectively call Pomega) bring counterclaims against Plaintiff Jones Lang LaSalle Americas, Inc. (which the parties and some in the industry call JLL) in this breach-of-contract suit. R. 47, Counterclaims ¶¶ 71–129.[1] JLL moved to dismiss the counterclaims, R. 51, Pl.'s Mot. to Dismiss, which the Court granted in part and denied in part, R. 63, Op. at 1–2. The key surviving counterclaim was Pomega's allegation that the parties' contract is illegal under South Carolina law. *Id.* at 9–10. Because one of the issues addressed in the Opinion—

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a). Specifically, JLL is a Maryland corporation with its principal place of business in Illinois, whereas Pomega and Kontrolmatik are Delaware corporations with principal places of business in Virginia. Counterclaims ¶¶ 15–16. And because JLL alleges that Pomega owes $4,250,000 in damages, R. 1, Compl. at 37–38, 42, the amount-in-controversy requirement is met.

whether the parties' contractual choice-of-law provision was unenforceable because it was contrary to South Carolina's fundamental policy—was not clearly teed up by Pomega in its briefing, the Court granted JLL the right to move for reconsideration of that issue de novo. *Id.* Pomega now moves for reconsideration on the fundamental-policy exception and related issues. R. 71, Pl.'s Mot. to Reconsider. On de novo review, the Court concludes that the fundamental-policy exception applies, so the motion is denied, and Pomega's pertinent counterclaim remains intact.

## I. Factual Background

For convenience, the Court repeats the factual background described in its prior Opinion. *See* Op. at 2–4. When evaluating the arguments for dismissal of the counterclaims, the Court accepts as true the factual allegations in Pomega's counterclaims and draws all reasonable inferences in its favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (per curiam)).

Pomega is a subsidiary of a Turkish corporation that operates a lithium-ion battery cell manufacturing facility overseas. Counterclaims ¶ 21. Pomega wanted to open a similar facility in the United States, but it was unfamiliar with the country's markets and regulations. *Id.* ¶¶ 20, 22. So Pomega hired JLL to help it navigate the process. *Id.* ¶¶ 22, 29. In May 2022, JLL and Pomega executed a Memorandum of Understanding—which the parties call the Agreement—that outlined the services JLL would provide and how it would be paid. *Id.* ¶ 23; R. 47, Defs.' Counterclaims Exh. A, Agreement. JLL agreed to help Pomega pick a location for the manufacturing

facility, and then negotiate with the pertinent state and local economic-development agencies to develop a package of economic incentives for Pomega. Counterclaims ¶¶ 29–32; Agreement Exh. A § 3.1. In return, Pomega agreed to pay JLL 10% of the negotiated economic benefits or $5 million, whichever would be less. Counterclaims ¶¶ 32–33; Agreement Exh. A § 3. The Agreement also contained the following choice-of-law provision: "The Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois." Counterclaims ¶ 48; Agreement § 9. And the Agreement contained a forum-selection provision: "Any legal proceeding of any nature brought by either party against the other to enforce any right or obligation under this Agreement … shall be submitted for trial, before a court of competent jurisdiction in Cook County, Illinois." Agreement § 9.

On JLL's advice, Pomega chose a site in Colleton County, South Carolina for its facility. Counterclaims ¶ 36. In December 2022, the South Carolina Department of Commerce offered Pomega a combined incentive package from the state and county that totaled $127,565,742. *Id.* ¶ 50. Pomega says that JLL identified and negotiated some, but not all, of the incentives in the package. *Id.* ¶ 51. For instance, JLL negotiated the terms of a cash grant from the state and a special source revenue credit from the county, but corporate income tax credits and sales tax exemptions were awarded based solely on statutory formulas, not JLL's efforts. *Id.* ¶¶ 51–52.

In February 2023, JLL and Pomega signed a First Amendment to the Agreement (which the parties call the Amendment). Counterclaims ¶ 58; R. 47, Defs.' Counterclaims Exh. C, Amendment. As relevant here, the Amendment replaced a sentence

in the Agreement that set a deadline for the contingency-fee payment with the following language:

> [The incentives-negotiation fee] is due to JLL upon approval of benefits package and relevant state and/or local governmental entities. [Pomega] acknowledges that JLL has completed the Services subject matter of this Agreement and that Payment of the … Fee is now due and payable to JLL and 100% free of any contingencies ….

Counterclaims ¶¶ 62–63; Amendment § 3. The Amendment also set a schedule for Pomega to pay JLL $5 million over the course of 18 months. Counterclaims ¶ 63; Amendment § 3. Pomega paid JLL $750,000 but refused to pay the rest of the $5 million. Counterclaim ¶ 66; R. 47, Answer ¶¶ 28–29, 31.

## II. Procedural History

Here in the Northern District of Illinois, JLL brought this suit for breach of contract. *See generally* Compl. Pomega brought its own suit in South Carolina, which JLL moved to transfer to this District pursuant to the Agreement's forum-selection clause; the motion was granted and Pomega's suit was consolidated with this case. R. 40, Status Rep. at 1–2; R. 42, 04/09/25 Order; R. 43, Pomega Am. Compl. After the consolidation, Pomega brought counterclaims in this case for declaratory judgment that the parties' contract is illegal because the contingency fee violates both Illinois and South Carolina law; breach of fiduciary duty; breach of contract; and violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/1 *et seq*. Counterclaims ¶¶ 71–129.

JLL moved to dismiss Pomega's counterclaims. Pl.'s Mot. to Dismiss. On the first counterclaim, JLL argued that Illinois law—not South Carolina law—governed the parties' relationship pursuant to the Agreement's choice-of-law provision. R. 52, Pl.'s Dismissal Br. at 5–7. And JLL contended that the parties' contingency fee did not violate Illinois law because the relevant statute—Section 8 of the Illinois Lobbyist Registration Act, 25 ILCS 170/8—prohibited fees contingent on negotiations with *Illinois* public officials, whereas JLL's fee was contingent on negotiations with officials in *South Carolina*. Pl.'s Dismissal Br. at 7–10. Pomega responded that the Illinois statute was not so limited, and that alternatively, the contingency fee also violated South Carolina law. R. 56, Defs.' Dismissal Resp. at 5–11.

The Court denied JLL's motion to dismiss the first counterclaim. Op. at 10. Agreeing with JLL that the Illinois statute does not reach its negotiations with South Carolina officials, the Court noted that there was a conflict of law because the contingency fee violated South Carolina law, but not Illinois law. *Id.* at 6–7. Because there was a conflict of law, the Court proceeded with a choice-of-law analysis using Illinois choice-of-law rules. *Id.* at 7–8. The Court noted that Illinois courts generally honor choice-of-law provisions in contracts. *Id.* at 8. But there are two exceptions: Illinois courts do not enforce choice-of-law provisions when (1) there is no reasonable basis for the chosen state, such as a substantial relationship to the parties or the transaction, or (2) enforcing the provision would be contrary to a fundamental policy of another state that has a materially greater interest in the issue than the chosen state. *Id.* On the second exception, the Court concluded that the parties' contingency fee

violates South Carolina's fundamental policy against such fees. *Id.* at 8. And the Court determined that South Carolina has a materially greater interest than Illinois in determining the legality of the fee because the fee was based on JLL's negotiations with South Carolina officials over a large amount of tax credits from South Carolina for a facility located in South Carolina. *Id.* at 8–9. The Court thus concluded that the fundamental-policy exception applied, the choice-of-law provision designating Illinois law was unenforceable, South Carolina law governed the validity of the contingency fee, and Pomega plausibly stated a claim for declaratory judgment that the contingency fee violates South Carolina law. *Id.* at 9.

The Court acknowledged that Pomega did not expressly raise the fundamental-policy exception to the choice-of-law provision. Op. at 9. But Pomega did repeatedly argue—in the counterclaim itself and in its dismissal briefing—that the contingency fee violates South Carolina law, which was enough to present the issue to the Court. *Id.* at 9–10. Still, because the exception was not expressly raised, the Court instructed JLL that if it wished to move to reconsider this aspect of the Opinion, the Court would consider the issue de novo. *Id.* JLL moved for reconsideration of the fundamental-policy exception and related issues. Pl.'s Mot. to Reconsider.

## III. Analysis

### A. Declaratory Judgment

#### 1. Law of the Case

JLL first argues that the South Carolina district court already decided that the choice-of-law provision was enforceable in its order granting JLL's motion to transfer,

so the law-of-the-case doctrine dictates that Illinois law applies. R. 72, Pl.'s Reconsideration Br. at 4–6. Pomega responds that JLL did not raise law of the case in its initial dismissal briefing, and that JLL's argument reaches beyond the narrow issue on which the Court allowed JLL to move for reconsideration de novo. R. 74, Defs.' Reconsideration Resp. at 4. Arguably, JLL could have raised this law-of-the-case argument in its original dismissal motion because the South Carolina district court issued the transfer order months before JLL filed its motion to dismiss here. *See* R. 72-3, Pl.'s Reconsideration Br. Exh. C, Transfer Order at 13 (decided on March 19, 2025); Pl.'s Mot. to Dismiss (filed on June 6, 2025). But the Court did raise the fundamental-policy exception without an express argument from Pomega in its dismissal briefing, so the same leniency towards JLL is warranted. *See* Op. at 9–10.

In any event, even if the Court considers JLL's argument, the law-of-the-case doctrine does not apply. *See* Defs.' Reconsideration Resp. at 2–4. "[T]he doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (cleaned up).[2] "When a case is transferred between district judges midway through litigation, the doctrine discourages the new judge from reconsidering rulings made by the original judge." *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022). But "law of the case

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

only applies where a court actually decided the issue in question." *Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007).

Here, the South Carolina district court did not actually decide whether the Illinois choice-of-law provision was enforceable. To decide JLL's motion to transfer, the district court needed to address only the validity and enforceability of the Agreement's *forum*-selection clause. Transfer Order at 8–10. Indeed, the South Carolina district court expressly *declined* to decide the merits of the parties' underlying contractual disputes, including whether the choice-of-law provision was enforceable. *See id.* at 8 n.7 (explaining that the legality of the contingency fee is irrelevant to the enforceability of the forum-selection clause); *id.* at 9 (stating that "questions surrounding the [Agreement's] validity should not and need not be decided now"); *id.* at 10 ("[T]he Court declines to decide the merits of the underlying dispute at this early stage of litigation.").

JLL points out that the South Carolina district court stated, "[G]iven that the [Agreement] contains a choice-of-law provision specifying that Illinois law applies to any dispute between the parties, [Pomega's] South Carolina-based claims arguably never should have been brought in the first place." Transfer Order at 12; *see* Pl.'s Reconsideration Br. at 5. But this is mere dicta. To repeat, the district court expressly declined to decide the underlying merits of the case earlier in its order. *See* Transfer Order at 9–10. And the district court used non-definitive language in that sentence anyway. *See id.* at 12 (saying that "*arguably*" the choice-of-law provision negates Pomega's claims under South Carolina law (emphasis added)). The context further

clarifies that the statement is dicta: the South Carolina district court was responding to an argument that the case should not be transferred because Pomega raises claims under South Carolina law. *See id.* at 11–12. The district court also considered the possibility that Pomega could still bring its South Carolina claims in Illinois court, noting that "federal courts are often called upon to apply the law of other states." *Id.* at 12 (quoting *Uretek, ICR Mid-Atl., Inc. v. Adams Robinson Enters., Inc.*, 2017 WL 4171392, at *7 (W.D. Va. Sept. 20, 2017)). And a few sentences later, the district court explained that, after the case is transferred, the transferee court could decide whether the choice-of-law provision in the parties' contract applies. *Id.* (citing *CH Mgmt., LLC v. Gama Aviation, LLC*, 2023 WL 5165662, at *4 (D.S.C. July 21, 2023)). Thus, the Court did not actually decide whether the choice-of-law provision is enforceable, and law of the case does not apply. *See Coughlin*, 481 F.3d at 462; *see also Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("Dicta are the parts of an opinion that are not binding on a subsequent court … as a matter of law of the case." (cleaned up)).

**2. Fundamental-Policy Exception**

On the exception itself, JLL first argues that Pomega did not properly raise the exception in its response to the motion to dismiss. Pl.'s Reconsideration Br. at 6. But that is why the Court invited JLL to move for reconsideration of the exception de novo (rather than the usual, more-stringent reconsideration standard). Thus, on a fresh slate for both parties, the Court addresses the merits of the fundamental-policy exception to the choice-of-law provision.

### a. Applicability of South Carolina Law

As an initial matter, JLL argues that the South Carolina statute does not apply to its contingency fee at all. Pl.'s Reconsideration Br. at 10–12; R. 80, Pl.'s Reconsideration Reply at 3–7. Pomega responds that the Court should not consider JLL's argument because JLL did not contest the applicability of the South Carolina statute in its original motion to dismiss, and this argument goes beyond the scope of the fundamental-policy exception. Defs.' Reconsideration Resp. at 10–11. But whether the parties' contingency fee violates the South Carolina statute is relevant to the fundamental-policy exception. And again, the Court excused Pomega's failure to expressly raise the fundamental-policy exception, so the Court will do the same for JLL.

That said, JLL's arguments about the inapplicability of the South Carolina statute are unpersuasive. South Carolina law incorporates a United States Treasury Department Circular: Circular No. 230 prohibits "practitioners" from charging "a contingent fee for services rendered in connection with any matter before the Internal Revenue Service" (which is commonly known as the IRS). Treas. Cir. 230 § 10.27(b). South Carolina's administrative tax statute incorporates the Circular's prohibition on contingency fees against "[r]epresentatives of taxpayers" in matters before state or local tax authorities. S.C. Code Ann. § 12-60-90(E), (F)(2)(b). Thus, under South Carolina's statute, representatives of taxpayers cannot charge fees contingent on their communications with state or local tax authorities. *See* S.C. Code Ann. § 12-60-90(A), (E), (F)(2)(b); Treas. Cir. 230 § 10.27(b). Because JLL's fees were contingent on

its communications and negotiations with South Carolina tax authorities, the statute appears to apply and invalidate the fee as illegal. *See* Op. at 6.

JLL's primary argument is that the Circular applies only to tax professionals, not consulting firms like JLL. Pl.'s Reconsideration Br. at 11; Pl.'s Reconsideration Reply at 3. The Circular prohibits "practitioner[s]" from charging contingency fees for services rendered for matters before the IRS. Treas. Cir. 230 § 10.27(b). And the Circular defines "[p]ractitioner" to mean attorneys, certified public accountants, enrolled agents, enrolled actuaries, enrolled retirement plan agents, and registered tax return preparers. Treas. Cir. 230 §§ 10.2(a)(5), 10.3(a)–(f). Because JLL is not any of these types of tax professionals, it contends that the Circular's prohibition on contingency fees—and the same prohibition incorporated into the South Carolina statute—does not apply. Pl.'s Reconsideration Br. at 11; Pl.'s Reconsideration Reply at 3.

But the Circular's scope is broader than what JLL proffers as its scope. The Circular "contains rules governing the recognition of attorneys, certified public accountants, enrolled agents, enrolled retirement plan agents, registered tax return preparers, and *other persons representing taxpayers* before the" IRS. Treas. Cir. 230 § 10.0(a) (emphasis added). And besides the types of tax professionals listed in the definition of "[p]ractitioner," the Circular also allows individuals to be represented before the IRS by certain non-tax professionals, including themselves, a family member, or a fiduciary. Treas. Cir. 230 §§ 10.2(a)(5), 10.3(a)–(g), 10.7(a)–(e). So the Circular allows that, in limited circumstances, non-tax professionals may represent taxpayers in matters before the IRS.

True, the contingency-fee provision of the Circular specifically says that "a *practitioner* may not charge a contingent fee for services rendered in connection with any matter before the" IRS. Treas. Cir. 230 § 10.27(b) (emphasis added). This language likely arises from the fact that non-tax professionals permitted to represent taxpayers before the IRS—such as a taxpayer's family member or fiduciary—do not usually charge the taxpayer a fee. So the contingency-fee prohibition is primarily applicable to tax practitioners, who charge for their services. But when non-practitioners *do* charge a fee, they must be bound by the same limitations as the tax professionals. Treas. Cir. 230 § 10.0. After all, the Circular "sets forth rules relating to the authority to practice before the" IRS and "the duties and restrictions relating to such practice." *Id.* So if a non-tax professional is authorized to practice before the IRS, they are bound by the Circular's restrictions on that practice, including the prohibition on contingency fees. *See id.*

The South Carolina statute contains essentially the same text and structure as the Circular. The statute refers to the Circular when defining who may represent taxpayers during matters before state and local tax authorities. S.C. Code Ann. § 12-60-90(C). Thus, like the Circular, the statute allows taxpayers to be represented before state and local tax authorities by certain tax professionals—attorneys, certified public accountants, and enrolled agents—the taxpayer themselves, or their fiduciary, among others. *Id.* Indeed, the South Carolina statute makes even clearer that the contingency-fee prohibition applies to *all* persons or entities representing taxpayers before state and local tax authorities. Rather than applying the contingency-fee

prohibition to only "practitioner[s]," Treas. Cir. 230 § 10.27(b), the statute mandates more broadly that "[r]epresentatives of taxpayers" must comply with the prohibition, S.C. Code Ann. § 12-60-90(E).

Citing language about JLL's fiduciary duty in the parties' Agreement, Pomega contends that JLL was its fiduciary, and thus its "representative[]," so the contingency-fee prohibition in the South Carolina statute applies. Defs.' Reconsideration Resp. at 11–12 (citing Counterclaims ¶¶ 3, 40–41, 93–94). JLL responds that it was not Pomega's "fiduciary" in the sense contemplated by the Circular. The Circular offers examples of fiduciaries: "a trustee, receiver, guardian, personal representative, administrator, or executor." Treas. Cir. 230 § 10.7(e). JLL says that these are all "persons who step into the shoes of the taxpayer by operation of law or legal instrument," whereas JLL is merely "a commercial consultant that used the word 'fiduciary' in an agreement." Pl.'s Reconsideration Reply at 6–7. But the Circular expressly notes that the above list offers only *examples* of fiduciaries; other types of individuals or entities may also qualify as a fiduciary. Treas. Cir. 230 § 10.7(e). And despite JLL's characterization, the listed examples are not categorically different from the relationship between JLL and Pomega. For instance, much like the Agreement in this case, a trust-trustee relationship can be established by contract between the parties. *See In re Berman*, 629 F.3d 761, 768–69 (7th Cir. 2011) (describing how express trusts may arise out of contractual relationships between parties). So at this stage in the case,

Pomega has plausibly alleged that JLL operated as its fiduciary, and thus South Carolina's prohibition on contingency fees applies.[3]

JLL also argues that the South Carolina statute does not apply because it communicated on Pomega's behalf with economic development agencies, not tax authorities. Pl.'s Reconsideration Reply at 4–5. The statute is limited to "matters connected with presentation to a state or local tax authority," but the statute does not define "state or local tax authority." S.C. Code Ann. § 12-60-90(A). So the Court relies on the plain meaning of this phrase, which encompasses any state or local authorities that can impose or administer taxes or tax credits. In its counterclaims, Pomega alleges that JLL negotiated a "special source revenue credit" on its behalf, which raises a plausible inference that JLL communicated with state and local authorities with the power to offer tax credits and exemptions—in other words, state or local tax authorities. *See* Counterclaims ¶ 51. Pomega also alleges that the contingency-fee prohibition was "reiterated in certain economic incentive applications prepared by the State," such as the "South Carolina job development credit application." *Id.* ¶ 9. This allegation, too, raises a reasonable inference that JLL negotiated with authorities covered by the South Carolina statute. In its reconsideration brief, JLL disputes these facts, arguing that the entities with which it communicated did not have the power

[3]If JLL is correct that it was not Pomega's fiduciary, then its contingency-fee arrangement was still unlawful under South Carolina law because then JLL was not even *authorized* to represent Pomega before local and state tax authorities in the first place. *See* Treas. Cir. 230 § 10.0 (describing how the Circular sets forth limits on both *who* can practice before the IRS and *what* those practitioners can do); S.C. Code Ann. § 12-60-90(C), (E) (same).

to tax. Pl.'s Reconsideration Reply at 4–5. But at the pleading stage, the Court accepts Pomega's factual allegations as true, and JLL cannot succeed by simply asserting that those allegations are untrue. Perhaps discovery may reveal that the agencies were not tax authorities, but for now, Pomega has plausibly alleged that JLL communicated with South Carolina tax authorities, subjecting it to the contingency-fee prohibition.

JLL's remaining arguments are similarly meritless. For example, JLL argues that the South Carolina statute does not apply because it offered other services besides negotiation of economic incentives. Pl.'s Reconsideration Br. at 11–12. But as Pomega notes, the contingency fee was not based on the other services that JLL provided (selecting the site and acquiring the real estate for Pomega's manufacturing facility). Defs.' Reconsideration Resp. at 12; Agreement Exh. A §§ 1–2. So those services are irrelevant to the legality of the contingency fee.

JLL notes that Circular 230 applies to "all matters connected with a presentation to the Internal Revenue Service … relating to a taxpayer's rights, privileges, or liabilities under laws or regulations administered by the Internal Revenue Service." Pl.'s Reconsideration Reply at 4; Treas. Cir. 230 § 10.27(c)(2); *see also* Treas. Cir. 230 § 10.2(a)(4). And JLL points out that it communicated with state agencies regarding tax incentives, rather than "prepar[ing] federal tax returns, render[ing] written advice on federal tax matters, or represent[ing] clients in federal tax proceedings before the IRS." Pl.'s Reconsideration Reply at 4. Thus, JLL contends that Circular 230 does not apply to its services. *Id.* But the legality of JLL's contingency fee turns on the

South Carolina statute, not the Circular itself. And the South Carolina statute does apply to JLL's negotiations with state and local tax authorities.

Finally, JLL highlights that the South Carolina statute applies to "*presentation* to a state or local tax authority." S.C. Code Ann. § 12-60-90(A) (emphasis added). Pointing to Pomega's factual allegation that "most economic incentives in South Carolina are awarded pursuant to statutory formulas rather than through negotiations," Counterclaims ¶ 42, JLL argues that it made no "presentation" to the state and local authorities, and thus the statute does not apply, Pl.'s Reconsideration Reply at 5–6. But based on the facts alleged in the counterclaims, at least some of JLL's services still involved negotiations with local and state authorities. *See* Counterclaims ¶ 120. And even the tax incentives that were awarded based on formulas likely required some form of communication with tax authorities, such as filing an application or documents. These communications would fall under the statute's broad definition of "presentations." S.C. Code Ann. § 12-60-90(A) (defining presentations to "include the preparation and filing of necessary documents, correspondence with, and communications to, state and local tax authorities, and the representation of a client at conferences and meetings"). Thus, based on the facts alleged in the counterclaims, the South Carolina statute does apply to JLL's services.

**b. Against Fundamental Public Policy**

Having decided that the South Carolina statute applies, the Court next turns to the two elements of the fundamental-policy exception. The first element requires that enforcing the choice-of-law provision would be contrary to a fundamental policy

of another state. *Dancor Constr., Inc. v. FXR Constr., Inc.*, 64 N.E.3d 796, 812–13 (Ill. App. Ct. 2016). JLL contends that the application of the Illinois choice-of-law provision is only contrary to South Carolina's fundamental policy if it violates "morals and abstract justice." Pl.'s Reconsideration Br. at 7 (quoting *Labor Ready, Inc. v. Williams Staffing*, 149 F. Supp. 2d 398, 407 (N.D. Ill. 2001)). JLL argues that the contingency-fee prohibition is merely a regulatory provision, so a violation of the statute does not meet this high standard. Pl.'s Reconsideration Br. at 7–8. But recent Illinois case law clarifies that "[a] state's legislative enactments reveal a state's public policy." *Dancor Constr.*, 64 N.E.3d at 814. And although "a fundamental policy must relate to more than mere formalities in a contract," fundamental policies do "include state statutes that make certain contracts illegal." *Id.* One of the cases that JLL cites affirms this proposition. *See* Pl.'s Reconsideration Br. at 7 n.5 (citing *Hartman v. Meta Platforms, Inc.*, 831 F. Supp. 3d 760, 771 (S.D. Ill. 2026) ("[A] fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal ….") (cleaned up)). South Carolina's statute shows that it has a fundamental policy against contracts that include fees contingent on communications with state and local tax authorities. Thus, application of Illinois law—which would permit enforcement of JLL's contingency fee, *see* Op. at 7—would be contrary to South Carolina's fundamental policy. *See Dancor Constr.*, 64 N.E.3d at 814. The first element is met.

**c. Materially Greater Interest**

The second element requires that South Carolina has a materially greater interest than Illinois in the determination of the legality of the contingency fee. *See*

*Dancor Constr.*, 64 N.E.3d at 813. "Whether another state has a materially greater interest in the subject matter of the litigation depends on (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Hendricks v. Novae Corp. Underwriting, Ltd.*, 868 F.3d 542, 545 (7th Cir. 2017) (cleaned up).

JLL contends that the Agreement was negotiated and executed in Illinois. Pl.'s Reconsideration Br. at 8. But the Agreement does not reflect where the parties executed the contract; it merely lists the address of JLL's Illinois headquarters when introducing JLL as a party to the contract. Agreement at 1. And Pomega alleges that although JLL prepared the Agreement in Illinois, there were no meaningful negotiations over the contract terms. Counterclaims ¶ 25. So viewing the factual allegations in the light most favorable to Pomega, the place of contracting and negotiation are neutral, and do not show that Illinois has an interest in this litigation. *See Dancor Constr.*, 64 N.E.3d at 814; *Hendricks*, 868 F.3d at 545.

JLL's principal place of business is in Illinois (it is incorporated in Maryland). Counterclaims ¶ 16; Pl.'s Reconsideration Br. at 9. In contrast, Pomega and Kontrolmatik are Delaware corporations with principal places of business in Virginia. Counterclaims ¶ 15; Pl.'s Reconsideration Br. at 9. So the parties' places of incorporation and principal places of business support an Illinois interest in the litigation, rather than a South Carolina interest.

But the most important factors in this case—the place of performance and subject matter of the contract—show that South Carolina has a materially greater interest in the validity of the contingency fee than Illinois. JLL contends that "[a]ll … negotiation services were performed by JLL's Illinois based … team," so the place of performance is Illinois. Pl.'s Reconsideration Br. at 8. But JLL ignores that there were individuals on the other end of its negotiations: South Carolina officials. Counterclaims ¶¶ 50–51. So although part of the performance of the Agreement was in Illinois—where JLL's employees worked—another, more substantial part of the performance was in South Carolina, where JLL negotiated the economic incentives package after the Colleton site was picked. What's more, the location of the subject matter of the contract—the new battery facility—is in South Carolina. *Id.* ¶¶ 35–36. Of course, the parties did not know at the outset of their contractual relationship that South Carolina would be selected for Pomega's new facility. *Id.* ¶ 35; Agreement Exh. A § 1; Pl.'s Reconsideration Br. at 9. But once South Carolina was selected, JLL's performance occurred there. Counterclaims ¶¶ 50–51. Pomega ended up receiving over $127 million in combined incentives. *Id.* ¶ 50. Given the extensive negotiations with South Carolina officials, and the ultimate size of the incentives package, South Carolina has a strong interest in the validity of JLL's contingency fee. *See Dancor Constr.*, 64 N.E.3d at 814; *Hendricks*, 868 F.3d at 546.

Indeed, Illinois has the *same* public policy as South Carolina because it also prohibits consultants from charging fees contingent on negotiations with Illinois public officials. *See* 25 ILCS 170/8. JLL argues that South Carolina cannot have a

materially greater interest in the contingency fee than Illinois if both states have similar policies. Pl.'s Reconsideration Br. at 10. But the opposite is true. Because Illinois has the same public policy against contingency fees, but application of Illinois law would allow JLL to enforce the contingency fee, Illinois has no interest in applying its law to this litigation. *See* Op. at 7, 9. Instead, South Carolina has a greater interest in applying its law, which would prohibit enforcement of the fee.

In sum, even on de novo review, the Court concludes that the fundamental-policy exception to the choice-of-law provision applies. Under South Carolina law, Pomega has plausibly stated a claim for declaratory judgment that the contingency fee is illegal.

**B. Other Counterclaims**

JLL also moves to reconsider the Court's denial of its motion to dismiss Pomega's counterclaims for breach of fiduciary duty and violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act (which the Court will call the Illinois Fraud Act). Pl.'s Reconsideration Br. at 12–14. Pomega responds again that these counterclaims are beyond the scope of the fundamental-policy exception, and thus cannot be reconsidered de novo. Defs.' Reconsideration Resp. at 12–15. Here, the Court agrees with Pomega. The Court will evaluate JLL's motion to reconsider the Court's decisions on the other counterclaims under the usual reconsideration standard.

Federal Rule of Civil Procedure 54(b) states that a court may reconsider an interlocutory ruling "at any time before the entry of a judgment adjudicating all the

claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b). Motions for reconsideration serve the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). Thus, a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (cleaned up). But a motion for reconsideration "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see also Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (motion to alter or amend a judgment under Rule 59(e), which also requires a showing of manifest error of law or fact or new evidence, "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." (cleaned up)).

For both counterclaims, JLL argues that if the Court concludes that the fundamental-policy exception does not apply, Illinois law governs, and the contingency fee does not violate Illinois law, then there can be no breach of fiduciary duty or violation of the Illinois Fraud Act. Pl.'s Reconsideration Br. at 12–13. But as just discussed, the fundamental-exception policy does apply. *See supra* Section III.A. So

Pomega plausibly alleges that JLL breached its fiduciary duty and violated the Illinois Fraud Act by including a fee arrangement that violates South Carolina law. *See* Counterclaims ¶¶ 99, 122–27; Op. at 11–12, 14–15.

JLL also asks the Court to reconsider its conclusion that JLL waived the argument that Pomega could not rely on ignorance of the law for the fiduciary-duty and fraud counterclaims. Pl.'s Reconsideration Br. at 12–13. In its Opinion, the Court concluded that "JLL waived this argument by failing to raise it in its opening brief" for dismissal. Op. at 12 n.4. JLL contends that it permissibly raised the argument for the first time in its reply brief because it was responding to Pomega's new contention in its response brief that JLL had "superior access to information" about United States law. Pl.'s Reconsideration Br. at 12–13. But this was not a new argument in Pomega's response brief; in its counterclaims, Pomega alleges that JLL had "greater knowledge of the economic incentives process," including specific knowledge "that South Carolina prohibits consultants from charging a contingency fee on an award of economic incentives." Counterclaims ¶¶ 41, 43; *see also id.* ¶ 22 (alleging that Pomega lacked knowledge about "the laws and regulations applicable to their planned development"); *id.* ¶¶ 93–94 (alleging that JLL "represented to Pomega … that it had specialized knowledge … with the economic incentives process specifically, by virtue of its experience in the industry"). So JLL could have raised the argument that ignorance of the law cannot establish a breach of fiduciary duty or fraudulent conduct in its opening dismissal brief. Its failure to do so constitutes waiver. *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019). Because the Court did not err in

concluding that JLL waived this argument, this is not a basis for reconsideration under Civil Rule 54(b).

In any event, even if JLL did not waive this argument, JLL fails to show that the fiduciary-duty and fraud counterclaims should be dismissed. Under Illinois law, which governs these counterclaims, *see* Op. at 11 n.3, 14 n.5, "misrepresentations … of law cannot form the basis of a claim for fraud. … [A]ll persons are presumed to know the law." *McIntosh v. Walgreens Boots Alliance, Inc.*, 135 N.E.3d 73, 84 (Ill. 2019). But this general rule does not apply if one party had superior access to information. *See id.* at 85. And here, Pomega alleges that JLL had superior access to the relevant law and information about the economic incentives process. Counterclaims ¶¶ 22, 41, 43, 93–94. JLL responds that Pomega is a sophisticated corporation with access to counsel who could have researched South Carolina's law on contingency fees. Pl.'s Reconsideration Reply at 14. But Pomega's factual allegations raise at least a plausible inference that JLL had superior information, thus stating a claim for breach of fiduciary duty and violation of the Illinois Fraud Act. *See McIntosh*, 135 N.E.3d at 85. At a minimum, JLL does not show that the Court committed manifest error in denying Pomega's motion to dismiss the counterclaims on this basis, so this is not a basis for granting the motion to reconsider.

Finally, JLL argues that if the Court concludes that South Carolina law controls, then Pomega cannot bring its counterclaim under the Illinois Fraud Act. Pl.'s Reconsideration Br. at 13–14. But as the Court explained in its prior Opinion, the Illinois Fraud Act offers an independent statutory claim that depends on whether the

alleged fraudulent conduct occurred in Illinois, not on the parties' choice-of-law provision. Op. at 14 n.5; *see Int'l Profit Assocs., Inc. v. Linus Alarm Corp.*, 971 N.E.2d 1183, 1191 (Ill. App. Ct. 2012). So the Court's decision that South Carolina law governs the validity of the contingency fee based on the fundamental-policy exception does not affect Pomega's ability to bring a claim under the Illinois Fraud Act based on JLL's alleged misrepresentations in Illinois. The Court did not commit a manifest error of law by concluding that Pomega could bring its Illinois statutory claim.

Even if the choice-of-law provision were relevant, it would still dictate the Illinois law governs, so Pomega could bring its counterclaim under the Illinois Fraud Act. *See* Agreement § 9. This fact distinguishes this case from those that JLL cites; in those cases, each plaintiff sought to bring a claim under a consumer protection statute from a *different* state than the state chosen in the parties' choice-of-law provision. *See Demitropolous v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1414 (N.D. Ill. 1996) (concluding that the plaintiff had to bring fraud claims under Wisconsin's consumer-protection statute, not the Illinois Fraud Act, because the parties chose Wisconsin as the governing law in their contract); *Janice Doty Unlimited, Inc. v. Stoecker*, 697 F. Supp. 1016, 1021 (N.D. Ill. 1988) (same with Georgia choice-of-law provision). And here, JLL provides no reason why either of the exceptions to the choice-of-law provision would apply to Pomega's fraud counterclaim. *See* Pl.'s Reconsideration Br. at 13–14. There is a reasonable basis to choose Illinois in the choice-of-law provision because JLL has its principal place of business in Illinois. Counterclaims ¶ 16; *see* Op. at 8. And unlike enforcement of the contingency fee, which

violates a fundamental South Carolina policy, there is no reason to think that enforcement of the Illinois Fraud Act would violate South Carolina's fundamental policy. Thus, the Court did not err in denying JLL's motion to dismiss this counterclaim.

## IV. Conclusion

The motion to reconsider, R. 71, is denied.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 4, 2026